UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X   Index No.:
BIJAL SHAH,

        Plaintiff,
                    **COMPLAINT**
  -against-

ROKT CORP., JUSTIN VILES, individually,
NEIL ROBINSON, individually, and BRUCE     Plaintiff Demands a
BUCHANAN, individually,              Trial by Jury

        Defendants.
------------------------------------------------------------------X

Plaintiff, BIJAL SHAH, by and through her attorneys, PHILLIPS & ASSOCIATES, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et. seq. ("Title VII"), and to remedy violations of the New York Executive Law and the Administrative Code of the City of New York based upon the supplemental jurisdiction of this Court pursuant to *Gibbs*, 38 U.S. 715 (1966) and 28 U.S.C. §1367, seeking damages to redress the injuries Plaintiff has suffered as a result of being harassed and discriminated against by her employer on the basis of her sex/gender, together with sexual harassment, creating a hostile work environment, and constructive discharge.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 42 U.S.C. §2000e et. seq.; 28 U.S.C. §1331, §1343, and supplemental jurisdiction thereto.

3. This action involves a Question of Federal Law.

4. Venue is proper in this district based upon the fact that a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of the State of New York.  28 U.S.C. §1391(b).

5. On or about February 18, 2018, Plaintiff received a Notice of Right to Sue Letter from the EEOC.

6. This action is being brought within ninety (90) days of the Notice of Right to Sue letter.

## PARTIES

7. Plaintiff is a female resident of the State of New York, County of New York.

8. At all times material, Defendant ROKT CORP. (hereinafter also referred to as "ROKT") was and is a foreign business corporation duly existing under the laws of the State of Delaware.

9. At all times material, Defendant ROKT was and is a foreign business corporation authorized to conduct business in the State of New York.

10. At all times material, Defendant ROKT was and is a foreign business corporation which does conduct business in the State of New York.

11. At all times material, Defendant JUSTIN VILES (hereinafter also referred to as "VILES") was and is Defendant ROKT's "Founder" and "Director of Innovation."

12. At all times material, Defendant VILES was Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

13. At all times material, Defendant NEIL ROBINSON (hereinafter also referred to as "ROBINSON") was Defendant ROKT's "Chief Revenue Officer."

14. At all times material, Defendant ROBINSON was Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

15. At all times material, Defendant BRUCE BUCHANAN (hereinafter also referred to as "BUCHANAN") was and is Defendant ROKT's "Chief Executive Officer."

16. At all times material, Defendant BUCHANAN was Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

17. Defendant ROKT, Defendant VILES, Defendant ROBINSON, and Defendant BUCHANAN are hereinafter also referred to as "Defendants."

18. At all times material, Plaintiff was an employee of Defendants.

## MATERIAL FACTS

19. In or around January 2016, Plaintiff began working for Defendants as a "Senior Marketing Manager" at Defendant ROKT's 33 Irving Place, 3rd Floor, New York, NY 10003 location.

20. As part of its business practice, Defendant ROKT has routine "EOQ" (End of Quarter) events in various parts of the country to discuss the company's performance during the previous quarter and celebrate the company's ongoing success.

21. In or around the first week of April 2016, Plaintiff attended her first EOQ which was held in Los Angeles, California.  Plaintiff quickly learned that EOQs were predominately drug-filled parties for Defendants and their employees and were used as opportunities for executives to sexually harass female staff.  At the L.A. EOQ, Plaintiff witnessed Defendant VILES ordering cocaine for himself and a group of employees.

22. At the time, Defendant VILES described ROKT's work culture on the company website as follows:

> "**As much as we work very hard, we play hard as well, and I think that's an important part of our culture, and an important part of having fun at work – if you're not having fun, then what's the point**?"

Unbeknownst to Defendants' prospective employees, "playing hard" for Defendants, and

especially Defendant VILES, meant rampant drug use and sexual exploitation of female staff.

23. By way of example, during the L.A. EOQ after-party, Defendant VILES repeatedly made comments about Plaintiff's breasts.  For example, Defendant VILES told Plaintiff, **"I can't focus on anything but your breasts while I'm talking to you."**  Seeing that Plaintiff was visibly uncomfortable by Defendant VILES' inappropriate comments, Plaintiff's coworker, Sarah Small, offered Plaintiff a jacket to cover her chest.

24. Defendant VILES openly made these comments in the presence of numerous employees, including Defendant BUCHANAN and Defendant ROBINSON.  Defendant BUCHANAN and Defendant ROBINSON did not appear surprised or offended by Defendant VILES' inappropriate behavior, did not take any remedial action, and condoned the harassment of Plaintiff.

25. Defendants fostered a discriminatory culture, whereby female employees were judged by their physical appearance and sexual desirability, rather than their work performance.  Employees told Plaintiff that ROKT focuses on hiring "pretty girls" and that Plaintiff "fit in" based on her appearance.

26. During the L.A. EOQ, Plaintiff confided in Defendant BUCHANAN that she was nervous about an upcoming presentation and asked him for guidance.  Instead, Defendant BUCHANAN simply replied, "**With the way you look, you have nothing to be insecure about. You are beautiful!**"

27. Back in New York, following the April 2016 EOQ, the sexual harassment toward Plaintiff continued.

28. Defendant VILES continued to repeatedly stare and make comments about Plaintiff's breasts during work meetings, including in the presence of other staff members.  **When Plaintiff tried**

**to discuss work-related matters, Defendant VILES again told Plaintiff that he could not focus on anything except her breasts.**

29. In or around late April 2016, Sarah Small told Plaintiff that there was a rumor circulating throughout the office that she (Plaintiff) was having a sexual relationship with Defendant ROBINSON.

30. Soon after, Defendant ROBINSON approached Plaintiff and said, "**I heard the rumor about us having sex. It would be funny if we went along with it.**" Similarly, during team meetings, Defendant ROBINSON would state, "**Bijal and I were here late last night**" and smirk, thereby perpetuated the false rumor and implying that he and Plaintiff had sex.

31. Plaintiff did not respond to Defendant ROBINSON's sexual advances.

32. Throughout her employment, Plaintiff also witnessed ROKT executives sexually harass other female employees.

33. For example, Plaintiff witnessed Defendant ROBINSON send Rebecca Reid numerous inappropriate text messages, **including asking Ms. Reid for her panties**. On another occasion, Plaintiff witnessed Defendant ROBINSON tell Ms. Reid, **"Your boobs look really good."**

34. Plaintiff also overheard Defendant BUCHANAN try to persuade Sarah Small to have sex with a project manager from Defendants' Sydney, Australia office. Ms. Small told Plaintiff "**Office hookups are a ROKT thing. It's no big deal at all**."

35. Defendant ROBINSON would encourage Plaintiff to have a sexual relationship with Defendant BUCHANAN and tell her that the only reason she was employed at ROKT was because "[Defendant BUCHANAN] wants to date you."

36. In or around July 2016, due to the continued sexual harassment and "frat-like" atmosphere at Defendant ROKT, Plaintiff tendered her resignation to Defendant ROBINSON and Defendant BUCHANAN.  However, Defendant BUCHANAN took Plaintiff to lunch to try to convince her to reconsider her resignation.

37. During that lunch, Plaintiff stated that she could no longer tolerate ROKT's discriminatory work culture, including Defendant VILES' sexually harassing conduct.  Defendant BUCHANAN acknowledged the sexual and gender demeaning culture at Defendant ROKT but convinced Plaintiff to withdraw her resignation by promising "changes" to "the culture" because he (Defendant BUCHANAN) was going to permanently move from Defendants' Sydney office to the New York office.  Defendant BUCHANAN also agreed to move Plaintiff to another position, away from Defendant ROBINSON, which Plaintiff accepted.  Although Plaintiff accepted the new position, she was dismayed that rather than address the sexual harassment and/or have the perpetrators stop their illegal conduct, she was the person that had to move positions.

38. Accordingly, in or around the summer of 2016, Plaintiff was reassigned as "Director of Self-Service Department," which represented a lateral transfer.  Plaintiff continued to perform her job duties in an exemplary manner and was frequently commended on the growth of the Self-Service Department under her leadership.

39. As part of ROKT's discriminatory culture, Defendants would set unequal performance requirements for female staff.  By way of example, in or around January 2017, Plaintiff gave a presentation for the direction and growth of the Self-Service Department for the 2017 calendar year.  Although the presentation was well received, ROKT's Chief Marketing Commercial Officer, Ant Hearne, and Chief Marketing Officer, Geoff Smith, told Plaintiff that

the Self-Service Department needed to be immediately "ready for revenue" and that the product was expected to generate approximately 40% of ROKT's overall revenue. Plaintiff responded that the product was still in its early stages and was not ready to generate revenue.

40. Because of Plaintiff's standpoint regarding revenue, Defendants stripped Plaintiff of her role and reassigned the leadership of the Self-Service Department to a male employee with less seniority than Plaintiff. However, unlike Plaintiff, the male employee was not required to generate revenue through the Self-Service Department. In fact, the male employee specifically told Ant Hearne and Geoff Smith that he did not believe the product was ready for revenue and gave a similar presentation as Plaintiff regarding direction and growth for 2017.

41. Despite Defendant BUCHANAN's promise to enact "changes" to ROKT's work culture, the discriminatory work culture persisted. For example, in or around January 2017, Defendant VILES addressed all *female* employees during a meeting, stating, "**You can't get dessert. You have to have a beach body for EOQ Hawaii**." Defendant VILES never made these comments to male staff.

42. In or around April 2017, Plaintiff attended her last EOQ meeting which was held in New York City. True to form, **Defendant VILES approached Plaintiff while she stood at a bar and insisted that she "give [him] a kiss."** Defendant VILES continued to pressure Plaintiff by saying, **"Come on. Just give me a kiss. Why can't you just give me a peck on the lips? It's not a big deal**."

43. Plaintiff declined Defendant VILES' unwanted sexual advances.

44. Thereafter, in or around April 2017, during the New York City EOQ, Defendant VILES was walking toward Plaintiff on the 5th floor hallway in the WeWork office. As Defendant VILES

and Plaintiff got closer, Plaintiff said, "Hi" and raised her hand to give him a high-five. **Unexpectedly, Defendant VILES instead smacked Plaintiff hard on her buttocks**.

45. Plaintiff felt humiliated, degraded, and emotionally distressed by Defendant VILES' inappropriate touching.

46. On or about April 14, 2017, unable to further endure Defendants' ongoing and escalating harassment, Plaintiff was forced to resign from her employment.

47. Defendants created a working environment that no reasonable person would tolerate.

48. During Plaintiff's exit interview, to "cover their tracks," Geoff Smith untruthfully accused Plaintiff of not meeting company expectations.  Plaintiff refuted Smith's false statement by listing numerous projects she completed and for which she received recognition.  Mr. Smith, realizing that Plaintiff easily refutted his pretextual statement, quickly responded, "Let me change my narrative, you delivered."

49. Defendants' actions were intended to create a work environment that no reasonable person would tolerate.

50. Defendants' actions were intended to, and did, constructively discharge Plaintiff.

51. Defendants would not have harassed Plaintiff but for her sex/gender.

52. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

53. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered, and continues to suffer, severe emotional distress and physical ailments.

54. As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, the future loss of income, the loss of salary, bonuses, benefits and other

compensation which such employment entails, loss of enjoyment of life, and other non-pecuniary losses.

55. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages as against all Defendants, jointly and severally.

### AS A FIRST CAUSE OF ACTION
### UNDER TITLE VII
### DISCRIMINATION

56. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

57. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended, for relief based upon the unlawful employment practices of Defendant ROKT. Plaintiff complains of Defendant's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex.

58. Defendant ROKT engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff because of her sex/gender, together with sexual harassment, creating a hostile work environment, and constructive discharge.

### AS A SECOND CAUSE OF ACTION
### UNDER STATE LAW
### DISCRIMINATION

59. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

60. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's . . . sex. . . to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

61. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex, together with sexual harassment, creating a hostile work environment, and constructive discharge.

62. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

### AS A THIRD CAUSE OF ACTION
### UNDER STATE LAW
### AIDING AND ABETTING

63. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

64. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

> "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

65. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

## AS A FOURTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## <u>DISCRIMINATION</u>

66. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

67. The Administrative Code of City of New York, Title 8, §8-107 [1] provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee of agent thereof, because of the actual or perceived … gender … of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

68. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions and otherwise discriminating against Plaintiff on the basis of her gender, together with sexual harassment, creating a hostile work environment, and constructive discharge.

## AS A FIFTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## <u>AIDING & ABETTING</u>

69. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

70. The New York City Administrative Code Title 8-107(6) provides that it shall be an unlawful discriminatory practice, "For any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this chapter, or attempt to do so."

71. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that the Defendants engaged in unlawful employment practices prohibited by Title VII, the New York Executive Law, and the New York City Administrative Code on the basis of her sex/gender, together with sexual harassment, creating a hostile work environment, and constructive discharge;

B. Awarding damages to the Plaintiff, for all lost wages and benefits, past and future, back pay and front pay and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy the Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: New York, New York
       May 7, 2018

                                      **PHILLIPS & ASSOCIATES, PLLC**
                                      *Attorneys for Plaintiff*

By:    _____/s/_____
            Erica L. Shnayder, Esq.
            45 Broadway, Suite 620
            New York, NY 10006
            Tel: 212-248-7431